JOSEPH T. NOTARO, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 32664.)

Court of Claims, March 14, 1955.

*Joseph Swart* for claimant.

*Jacob K. Javits, Attorney-General* (*Frank M. Noonan* of counsel), for defendant.

Ryan, J. Joseph T. Notaro is a dairy farmer. He operated a farm of 142 acres in the town of Brant, Erie County. By a notice of appropriation recorded in the County Clerk's office November 2, 1953, and served on Notaro November 18, 1953, the State of New York appropriated his entire farm for Evangola State Park. Thereby Notaro was put out of business although he had a herd, farm and dairy equipment and a family to support. He filed his claim in this court on June 29, 1954, the issues came to trial December 13, 1954, and this court rendered its decision December 31, 1954. We awarded Notaro $60,865, with interest thereon from November 2, 1953, to May 18, 1954, and with further interest thereon from June 29, 1954, to the date of entry of judgment. That was in compliance with statute. (Conservation Law, § 676-a, subd. 8; Court of Claims Act, § 10, subd. 1, § 19, subd. 1.)

About two weeks after the filing of our decision there was informally presented to this court a copy of a document entitled " Agreement for Partial Payment " dated July 15, 1954, entered into between this claimant and the Niagara Frontier State Park Commission. This agreement recited that the State would pay to Notaro $18,000 which sum was 60% of $30,000 " the amount hereby determined by the Commission to be the value of all

claims for the property appropriated and legal damages caused by such appropriation ''. Notaro agreed to furnish " all formal papers which the Attorney-General deems necessary to authorize payment and to secure to the State a full release of all claims ''. Payment was to be made " only upon approval by the Comptroller of the State of New York and upon certificate of the Attorney-General as required by law ''. It was agreed that " if the Court of Claims finds the value of the property appropriated and legal damages caused by the appropriation * * * is equal to or exceeds the partial payment made hereunder, the amount of such partial payment shall be deducted from the amount so found by the Court and the award of said Court shall be in the amount of the excess, if any, over and above said partial payment. It is also agreed that no interest shall be allowed on the amount of such partial payment ''. No reference to the existence of this agreement appears in the record of the trial.

The agreement recited that it was made " pursuant to section 676-a of the Conservation Law ''. The pertinent subdivisions are 12 and 13 as amended (L. 1953, ch. 528, § 7; L. 1954, ch. 743, § 2). Similar amendments were made to the Highway Law, the Grade Crossing Elimination Acts, the Canal Law and the act authorizing the flood control program. The obvious legislative intent is to aid citizens who find themselves in Notaro's predicament, viz., their homes, farms or industrial sites taken from them by the eminent domain of the State in its ever-widening program for the development of thruways, highways, parks and parkways. Unquestionably the legislative device was designed to provide such injured persons with capital to re-establish themselves until their claims can be litigated or adjusted. In order that the plan be effective it is essential that payment shall be prompt. If it is not to be, there is no point in any owner availing himself of the statute. Notaro's case, which is the first instance of such an agreement to come to this court's attention, strikingly illustrates what wise legislators must have had in mind, and it is well to note that they did not put into the law any provision for forfeiture or forbearance of interest.

Now the Constitution provides that private property shall not be taken for public use without just compensation. (Art. I, § 7.) It is elemental that where land is taken payment of the value thereof should be coincident with the taking, and if, for any reason, payment is postponed the right to interest, from the date of the taking of the property until the date of payment, follows as a matter of strict constitutional right. (*People ex rel. City of New York* v. *Stillings*, 134 App. Div. 480. See, also, *Devlin v*

*Mayor of City of N. Y.,* 131 N. Y. 123.) Of course it cannot be denied that a party may waive his right to interest, expressly or by implication. (*Cutter* v. *Mayor of City of N. Y.,* 92 N. Y. 166.) It appears here that Notaro has done so expressly. But it is also fully apparent that he did so in expectation of a prompt, if not immediate, payment to him of the sum stated. What other consideration was there for his waiver of interest? It could not have been within the contemplation of the parties that payment should be withheld until after trial and adjudication. It strikes us, therefore, that the contract was voidable and one that equity would reform. However, Notaro has not sought such relief.

When the matter was first put before us, informally as we have said, this court indicated to counsel on both sides that we would disapprove an amendment to our decision were formal application for such amendment made. No motion has been forthcoming. But there is now presented to this court a written stipulation which recites that the sum of $18,000 has been paid. The date of payment is not stated. We are now asked to sign an order reopening the case and amending our decision by inserting therein a finding of fact that the agreement we have hereinabove referred to was made and continuing: " pursuant to which agreement the sum of Eighteen Thousand Dollars ($18000.00) has been paid to claimant ". It is also proposed that we shall amend our conclusion of law, which recites the amount of the award to claimant, so that it will deny him interest on $18,000 from November 2, 1953. At the legal rate of 4% (State Finance Law, § 16), the interest now amounts to more than $900. That is a substantial sum.

To adopt these proposed amendments would not only condone the six months' delay in approving title and in making payment, for which no excuse is even suggested, but would make this court party to a proceeding contrary to the Constitution and in avoidance of the intent of the statute. That enactment was not designed to give the State's agents bargaining power over property owners, prior to trial, nor to hand them a club with which to threaten an appeal from the court's determination, after trial.

Claimant, of course, is a free citizen. If he wishes to yield part of that to which he is entitled he can do so by accepting less than the amount of the judgment to be entered in his favor. That is his business. It is not the concern of this court. Machinery can be found for effectuating the purpose. An amendment to our decision is unnecessary. Our duty to hear and determine the value of the property and the legal damages sustained was

discharged when we filed our decision on December 31, 1954. (Court of Claims Act, § 9.) We decline to reopen and we decline to amend.

Rule 28 of the Court of Claims provides as follows: " The successful party shall within five days after receipt from the clerk of a notification of the decision of the court submit to the clerk an original and three copies of his proposed judgment. If said party fails to do so, the adverse party may submit such proposed judgment. Unless otherwise ordered by the court, or a judge thereof, the judgment in appropriation claims and claims for damages to real property caused by the state as the case may be shall not be entered until the attorney general files in the clerk's office at Albany his written approval of title to the property appropriated or damaged by the state including his direction as to the claimant or claimants in whose name the judgment should be entered. In all other cases judgment shall be entered by the clerk as soon as the proposed judgment is submitted to him pursuant to this rule, or in default thereof as soon as practicable thereafter ".

It must be that the Attorney-General has issued written approval of title and that a certificate thereof has already been filed with the State Comptroller because without such a certificate the Comptroller would not have been authorized to make the reported payment. (Conservation Law, § 676-a, subd. 12.)

For the foregoing reasons this court, by separate order, now directs that the filing of the written approval of title be dispensed with and that the clerk forthwith enter judgment in accordance with our decision heretofore filed.